FILED
2018 Dec-13  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **ERIK HENDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.:** |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| **CITY OF BIRMINGHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

## INTRODUCTION

1.      This is an action for legal and equitable relief to redress unlawful discrimination on the basis of stereotypes associated with race and retaliation against the Plaintiff, Erik Henderson (hereinafter "Plaintiff" or "Henderson"), a current employee of the City of Birmingham.  This suit is brought to secure the protection of and to redress the deprivation of rights secured by the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, as amended and 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. Plaintiff requests a trial by jury of all triable issues.

1

## JURISDICTION AND VENUE

2.      Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.,* 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991

3.      Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1343(a)(3) and 42 U.S.C. § 2000e, *et. seq.*

4.      This action is brought within the State where the unlawful employment practices were committed, making venue proper under 42 U.S.C. 2000e-5(f)(3).

5.      Plaintiff's claims are authorized by 28 U.S.C. § § 2201 and 2202 (declaratory judgments), and Fed. R. Civ. P. Rule 57.

6.       Plaintiff has satisfied all administrative prerequisites to bringing this claim.

## PARTIES

7.      Plaintiff Erik Henderson is a thirty-five (35) year old African American, male citizen of the United States and of the State of Alabama.  He is a resident of this Judicial District and Division.

8.      Defendant City of Birmingham ("Defendant" or City") is a municipality of the State of Alabama. At all times relevant hereto the Defendant has engaged in business in Birmingham, Alabama and is an employer within the meaning of 42 U.S.C. § 2000e(a), Title VII of the 1964 Civil Rights Act and the 1991 amendments

2

thereto.  At all times relevant to this action, the Defendant has maintained and operated a business in Alabama and has fifteen (15) or more employees and is considered an employer for Title VII purposes and the 1991 amendments thereto.

## ADMINISTRATIVE PROCEDURES

9.    Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination and retaliation that occurred at the City of Birmingham.

10.    This action seeks to redress unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment.

11.    Plaintiff timely filed his Charge of Discrimination (420-2018-01778) (*Exhibit A)* against Defendant with the Equal Employment Opportunity Commission on March 21, 2018, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.

12.    On September 12, 2018, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff a Notice of Right to Sue regarding her EEOC Charges. Plaintiff received said Notice on September 16, 2018.  *(Exhibit B).*

13.    Plaintiff filed suit within ninety (90) days of receipt of his Notice of Right to Sue. (Exhibit C)

14.    All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## STATEMENT OF FACTS

15.    Plaintiff, Erik Henderson, is a thirty-five (35) year old, African American male who was hired by the Defendant on March 17, 2007 as a police officer.

16.    Henderson has been discriminated and retaliated against because he has asserted his rights afforded to him under the Constitution of the United States and because he participated in the protected activity of complaining of racial discrimination.

17.    Plaintiff began employment with the City the of Birmingham in or around March 17, 2007, as a police officer.

18.    On January 09, 2017 North Precinct was working with a shortage of officers and Deputy Chief Cedric Stevens ("Stevens"), who was at that time the North Precinct Captain, had stated that due to the shortage of officers, the desk officer should handle any walk-in citizens needing a report.

19.    At approximately 1448 hours Henderson, while still in roll call at North Precinct, Henderson was dispatched to North Precinct to assist a citizen who needed a report regarding a theft in Bessemer, Alabama.

20.    Henderson spoke with Sergeant Charlie Newfield ("Newfield") to inquire whether he should take the report or should the desk officer take the report as instructed by Stevens.

21.    Newfield confronted Henderson, got in his face and pointed his finger in a physically threatening manner and stated in an angry and hostile tone, "She gave you the call and you need to go answer it."

22.    Henderson asked Newfield why he was treating him and talking to him so abusively, Newfield replied, "Do you want me to write you up?"

23.    Henderson met with the citizen to take the report.  While interviewing the citizen, Henderson noticed that Newfield was purposefully driving slowly by and observing Henderson's interaction with the citizen.

24.    The citizen received a phone call from Birmingham Police Department Dispatch while Henderson was taking the report.  The dispatcher was asking the citizen a line of questions, seemingly to elicit a citizen complaint against Henderson. One very specific question was "Do you have any complaints?"

25.    Newfield later called Henderson to the precinct at approximately 1900 hours and gave him a Letter of Counseling for unnecessary use of a police radio, a form of formal discipline.

26.    Approximately four (4) days before Henderson's write up, a similarly situated Caucasian male officer, Melvin Godbee, was told over the radio to stop going back

and forth (arguing) with dispatch but was not written up nor did he receive any form of formal discipline.

27.    Henderson made a formal complaint of racial discrimination against Newfield to the City of Birmingham Human Resources Director, Peggy Polk ("Polk").

28.    Sometime later, Stevens issued a direct order on procedures he wanted followed for making and documenting a required business check to a local motel located within the patrol area of Henderson.  This procedure was to deter a problem with trespassing.  Officers were told to get out on the radio (notifying dispatch) and document the checks on their "snitch sheets" (daily activity log).  Sergeants were required to make sure that these procedures were enforced a minimum of two times per shift.

29.    Henderson arrived at the local motel to follow the order of Stevens.

30.    Once he got out on the radio, Newfield instructed Henderson not to follow Stevens order.  Henderson explained he was following Stevens order.

31.    Newfield was interfering with Henderson's working conditions and creating a hostile work environment by interfering with Henderson's job performance and placing him in less than desirable working conditions.

32.    Henderson was being micromanaged and his work performance was being closely scrutinized by Newfield.

33.    Other similarly situated Caucasian officers were allowed to follow Stevens order without interference from Newfield.

34.    Henderson spoke with Sergeant Norman Adams about the incident and requested to speak with Lieutenant Joe Roberts ("Roberts").

35.    Henderson asked Roberts to have Newfield refrain from harassing and placing Henderson in a hostile work environment.

36.    Roberts stated he could not stop Newfield and that Henderson did not have anything to complain about, but he [Roberts] would speak with Newfield.

37.    Henderson made another formal complaint to Polk who stated that she had received similar complaints from approximately seven other African American officers against Newfield and she would be having a meeting with Chief A.C. Roper ("Roper") regarding the issue.

38.    On July 15, 2017 an officer, Robert Lewis, Jr., overheard Newfield discussing some prior incidents on Henderson's criminal record with Sergeant Timothy Bell. The only way Newfield could have obtained this information was to run an unauthorized NCIC/ACIC search on Henderson which is a violation of Henderson's federal rights.

39.    Henderson made a formal complaint with Lynn Shobe regarding the unauthorized criminal history search.

40.     Newfield's response to the multiple grievances filed by Henderson was that he had been cleared by the Birmingham Police Department Internal Affairs Division ("IAD").

41.     Newfield's wife, Rebecca Herrara, is a sergeant in IAD.

42.     Roper failed to respond stating the Henderson's grievance was untimely. Henderson asserts that his grievance was intentionally held and not submitted within the proper time.

43.     On September 21, 2017 Henderson filed a grievance with the Personnel Board of Jefferson County ("PBJC") due to the fact that the Birmingham Police Department was not conducting a proper investigation into his allegations of racial discrimination.

44.     The Defendant failed to remove Newfield as Henderson's sergeant despite his multiple requests for assistance from the Defendant to stop the harassment, retaliation and hostile work environment.

45.     On October 23, 2017 Henderson was called on the phone by Officer Tasha Thomas ("Thomas") in IAD and questioned about a ring that Henderson's family was purchasing for him to celebrate his tenth (10th) anniversary of being on the Birmingham Police force.  The ring is a replica of Henderson's badge.

46.     Thomas stated that IAD wanted to inspect the ring.  Henderson informed Thomas that the ring had been ordered, but the ring had not been completed and purchased by his family.

47.     Henderson asked Thomas had he violated any rules or regulations and Thomas stated no.

48.     Henderson was called to IAD by Lieutenant David Grayson ("Greyson") and Roberts.

49.     Grayson gave Henderson a direct order to produce the ring for inspection on the following day, October 24, 2017.  Again, Henderson informed Greyson that he did not have possession of the ring yet because the jeweler had not completed it nor had his family paid for it.

50.     Henderson asked Greyson what rules or regulations he had violated, and Greyson stated none.

51.     Greyson had a picture of the ring that had been given to him by some other source and therefore, he could determine that no copyright laws had been violated.

52.     Henderson was questioned by Greyson without being tape recorded which is a violation of City of Birmingham Rules and Regulations procedure 110-1, Complaints, Investigations and Disciplinary Actions.

53.     This incident was intimidation, harassment and retaliation by IAD against Henderson for the multiple complaints and grievances Henderson has filed on

Newfield.  Henderson asserts that Newfield's wife, Herrara, a sergeant in IA, is targeting him.

54.    Henderson filed another grievance with the PBJC regarding the incident involving Henderson's celebratory ring.

55.    Roper responded that he instructed IAD to investigate a credible complaint against Henderson regarding a badge replication, however Henderson was told by Thomas and Greyson he had not violated any rules or regulations and never stated he was under investigation. Further, proper investigation procedures were not followed during the questioning by Thomas or Greyson.

56.    On January 16, 2018 Newfield filed a complaint on Henderson for being off of his beat for providing police presence on Martin Luther King Day at the Civil Rights Museum after Henderson observed a large crowd gathered.  Newfield investigated his own complaint along with another sergeant Sergeant Ward.

57.    Other similarly situated Caucasian officers have performed duties off their beat without having complaints filed against them.

58.    On October 18, 2018, Henderson was given a letter documenting a Verbal Counseling for productivity stating that his productivity submitted on September 25 and October 17, 2018 were unacceptable.

59.    The Birmingham Police Department does not have "quota" or monthly minimum requirements.

60.     Henderson has suffered a breakdown of his personal health as a direct result of the discrimination, retaliation and hostile work environment he has been subjected to.

61.     Henderson has sought the help of employee assistance, a psychiatrist and doctors for assistance in dealing the emotional, physical and mental affects the harassment, hostile work environment and retaliation are having on him.

62.     Henderson has been diagnosed with many health conditions that are directly related to the stress and mental anguish he has been subjected to as a result of asserting his rights afforded him under Title VII against the Defendant.


**COUNT ONE**
**TITLE VII and 42 U.S.C § 1981**
**RACE DISCRIMINATION**


63.     Plaintiff, Erik Henderson, is a thirty-five (35) year old, African American male who was hired by the Defendant on March 17, 2007 as a police officer.

64.     Henderson has been discriminated and retaliated against because he has asserted his rights afforded to him under the Constitution of the United States and because he participated in the protected activity of complaining of racial discrimination.

65.     Plaintiff began employment with the City the of Birmingham in or around March 17, 2007, as a police officer.

66.     On January 09, 2017 North Precinct was working with a shortage of officers and Deputy Chief Cedric Stevens ("Stevens"), who was at that time the North Precinct Captain, had stated that due to the shortage of officers, the desk officer should handle any walk-in citizens needing a report.

67.     At approximately 1448 hours Henderson, while still in roll call at North Precinct, Henderson was dispatched to North Precinct to assist a citizen who needed a report regarding a theft in Bessemer, Alabama.

68.     Henderson spoke with Sergeant Charlie Newfield ("Newfield") to inquire whether he should take the report or should the desk officer take the report as instructed by Stevens.

69.     Newfield confronted Henderson, got in his face and pointed his finger in a physically threatening manner and stated in an angry and hostile tone, "She gave you the call and you need to go answer it."

70.     Henderson asked Newfield why he was treating him and talking to him so abusively, Newfield replied, "Do you want me to write you up?"

71.     Henderson met with the citizen to take the report.  While interviewing the citizen, Henderson noticed that Newfield was purposefully driving slowly by and observing Henderson's interaction with the citizen.

72.     The citizen received a phone call from Birmingham Police Department Dispatch while Henderson was taking the report.  The dispatcher was asking the

citizen a line of questions, seemingly to elicit a citizen complaint against Henderson. One very specific question was "Do you have any complaints?"

73.     Newfield later called Henderson to the precinct at approximately 1900 hours and gave him a Letter of Counseling for unnecessary use of a police radio, a form of formal discipline.

74.     Approximately four (4) days before Henderson's write up, a similarly situated Caucasian male officer, Melvin Godbee, was told over the radio to stop going back and forth (arguing) with dispatch but was not written up nor did he receive any form of formal discipline.

75.     Henderson made a formal complaint of racial discrimination against Newfield to the City of Birmingham Human Resources Director, Peggy Polk ("Polk").

76.     Sometime later, Stevens issued a direct order on procedures he wanted followed for making and documenting a required business check to a local motel located within the patrol area of Henderson.  This procedure was to deter a problem with trespassing.  Officers were told to get out on the radio (notifying dispatch) and document the checks on their "snitch sheets" (daily activity log).  Sergeants were required to make sure that these procedures were enforced a minimum of two times per shift.

77.     Henderson arrived at the local motel to follow the order of Stevens.

78.     Once he got out on the radio, Newfield instructed Henderson not to follow Stevens order.  Henderson explained he was following Stevens order.

79.     Newfield was interfering with Henderson's working conditions and creating a hostile work environment by interfering with Henderson's job performance and placing him in less than desirable working conditions.

80.     Henderson was being micromanaged and his work performance was being closely scrutinized by Newfield.

81.     Other similarly situated Caucasian officers were allowed to follow Stevens order without interference from Newfield.

82.     Henderson spoke with Sergeant Norman Adams about the incident and requested to speak with Lieutenant Joe Roberts ("Roberts").

83.     Henderson asked Roberts to have Newfield refrain from harassing and placing Henderson in a hostile work environment.

84.     Roberts stated he could not stop Newfield and that Henderson did not have anything to complain about, but he [Roberts] would speak with Newfield.

85.     Henderson made another formal complaint to Polk who stated that she had received similar complaints from approximately seven other African American officers against Newfield and she would be having a meeting with Chief A.C. Roper ("Roper") regarding the issue.

86.     On July 15, 2017 an officer, Robert Lewis, Jr., overheard Newfield discussing some prior incidents on Henderson's criminal record with Sergeant Merriman Bell. The only way Newfield could have obtained this information was to run an unauthorized NCIC/ACIC search on Henderson which is a violation of Henderson's federal rights.

87.     Henderson made a formal complaint with Lynn Shobe regarding the unauthorized criminal history search.

88.     Newfield's response to the multiple grievances filed by Henderson was that he had been cleared by the Birmingham Police Department Internal Affairs Division ("IAD").

89.     Newfield's wife, Rebecca Herrara, is a sergeant in IAD.

90.     Roper failed to respond stating the Henderson's grievance was untimely. Henderson asserts that his grievance was intentionally held and not submitted within the proper time.

91.     On September 21, 2017 Henderson filed a grievance with the Personnel Board of Jefferson County ("PBJC") due to the fact that the Birmingham Police Department was not conducting a proper investigation into his allegations of racial discrimination.

92.    The Defendant failed to remove Newfield as Henderson's sergeant despite his multiple requests for assistance from the Defendant to stop the harassment, retaliation and hostile work environment.

93.    On October 23, 2017 Henderson was called on the phone by Officer Tasha Thomas ("Thomas") in IAD and questioned about a ring that Henderson's family was purchasing for him to celebrate his tenth (10th) anniversary of being on the Birmingham Police force.  The ring is a replica of Henderson's badge.

94.    Thomas stated that IAD wanted to inspect the ring.  Henderson informed Thomas that the ring had been ordered, but the ring had not been completed and purchased by his family.

95.    Henderson asked Thomas had he violated any rules or regulations and Thomas stated no.

96.    Henderson was called to IAD by Lieutenant David Grayson ("Greyson") and Roberts.

97.    Grayson gave Henderson a direct order to produce the ring for inspection on the following day, October 24, 2017.  Again, Henderson informed Greyson that he did not have possession of the ring yet because the jeweler had not completed it nor had his family paid for it.

98.    Henderson asked Greyson what rules or regulations he had violated, and Greyson stated none.

99.   Greyson had a picture of the ring that had been given to him by some other source and therefore, he could determine that no copyright laws had been violated.

100.   Henderson was questioned by Greyson without being tape recorded which is a violation of City of Birmingham Rules and Regulations procedure 110-1, Complaints, Investigations and Disciplinary Actions.

101.   This incident was intimidation, harassment and retaliation by IAD against Henderson for the multiple complaints and grievances Henderson has filed on Newfield.   Henderson asserts that Newfield's wife, Herrara, a sergeant in IA, is targeting him.

102.   Henderson filed another grievance with the PBJC regarding the incident involving Henderson's celebratory ring.

103.   Roper responded that he instructed IAD to investigate a credible complaint against Henderson regarding a badge replication, however Henderson was told by Thomas and Greyson he had not violated any rules or regulations and never stated he was under investigation. Further, proper investigation procedures were not followed during the questioning by Thomas or Greyson.

104.   On January 16, 2018 Newfield filed a complaint on Henderson for being off of his beat for providing police presence on Martin Luther King Day at the Civil Rights Museum after Henderson observed a large crowd gathered.   Newfield investigated his own complaint along with another sergeant Sergeant Ward.

105.   Other similarly situated Caucasian officers have performed duties off their beat without having complaints filed against them.

106.   On October 18, 2018, Henderson was given a letter documenting a Verbal Counseling for productivity stating that his productivity submitted on September 25 and October 17, 2018 were unacceptable.

107.   The Birmingham Police Department does not have "quota" or monthly minimum requirements.

108.   Other similarly situated Caucausian officers include Jonathan Robbins, Evan Orazine, Kyle Breece, Carl Endert, Ralph Burgin, Michael Raspbury and Christopher Graham.

109.   Henderson has suffered a breakdown of his personal health as a direct result of the discrimination, retaliation and hostile work environment he has been subjected to.

110.   Henderson has sought the help of employee assistance, a psychiatrist and doctors for assistance in dealing the emotional, physical and mental affects the harassment, hostile work environment and retaliation are having on him.

111.   Henderson has been diagnosed with many health conditions that are directly related to the stress and mental anguish he has been subjected to as a result of asserting his rights afforded him under Title VII against the Defendant.

## COUNT TWO
## TITLE VII and 42 U.S.C § 1981
## RETALIATION

112.   Henderson claims that the Defendant retaliated against him because he took steps to enforce his lawful rights under Title VII after (1) he complained of race discrimination and (2) after he filed an EEOC complaint.   The Defendant's retaliatory actions include: (1) failing to remove Newfield as Henderson's supervisor, (2) retaliatorily disciplining Henderson and (3) conducting false investigations.

113.   Sometime later, Stevens issued a direct order on procedures he wanted followed for making and documenting a required business check to a local motel located within the patrol area of Henderson.   This procedure was to deter a problem with trespassing.   Officers were told to get out on the radio (notifying dispatch) and document the checks on their "snitch sheets" (daily activity log).   Sergeants were required to make sure that these procedures were enforced a minimum of two times per shift.

114.   Henderson arrived at the local motel to follow the order of Stevens.

115.   Once he got out on the radio, Newfield instructed Henderson not to follow Stevens order.   Henderson explained he was following Stevens order.

116.   Newfield was interfering with Henderson's working conditions and creating a hostile work environment by interfering with Henderson's job performance and placing him in less than desirable working conditions.

117.   Henderson was being micromanaged and his work performance was being closely scrutinized by Newfield.

118.   Other similarly situated Caucasian officers were allowed to follow Stevens order without interference from Newfield.

119.   Henderson spoke with Sergeant Norman Adams about the incident and requested to speak with Lieutenant Joe Roberts ("Roberts").

120.   Henderson asked Roberts to have Newfield refrain from harassing and placing Henderson in a hostile work environment.

121.   Roberts stated he could not stop Newfield and that Henderson did not have anything to complain about, but he [Roberts] would speak with Newfield.

122.   Henderson made another formal complaint to Polk who stated that she had received similar complaints from approximately seven other African American officers against Newfield and she would be having a meeting with Chief A.C. Roper ("Roper") regarding the issue.

123.   On July 15, 2017 an officer, Robert Lewis, Jr., overheard Newfield discussing some prior incidents on Henderson's criminal record with Sergeant Merriman Bell. The only way Newfield could have obtained this information was to run an

unauthorized NCIC/ACIC search on Henderson which is a violation of Henderson's federal rights.

124.   Henderson made a formal complaint with Lynn Shobe regarding the unauthorized criminal history search.

125.   Newfield's response to the multiple grievances filed by Henderson was that he had been cleared by the Birmingham Police Department Internal Affairs Division ("IAD").

126.   Newfield's wife, Rebecca Herrara, is a sergeant in IAD.

127.   Roper failed to respond stating the Henderson's grievance was untimely. Henderson asserts that his grievance was intentionally held and not submitted within the proper time.

128.   On September 21, 2017 Henderson filed a grievance with the Personnel Board of Jefferson County ("PBJC") due to the fact that the Birmingham Police Department was not conducting a proper investigation into his allegations of racial discrimination.

129.   The Defendant failed to remove Newfield as Henderson's sergeant despite his multiple requests for assistance from the Defendant to stop the harassment, retaliation and hostile work environment.

130.   On October 23, 2017 Henderson was called on the phone by Officer Tasha Thomas ("Thomas") in IAD and questioned about a ring that Henderson's family

was purchasing for him to celebrate his tenth (10th) anniversary of being on the Birmingham Police force.  The ring is a replica of Henderson's badge.

131.   Thomas stated that IAD wanted to inspect the ring.  Henderson informed Thomas that the ring had been ordered, but the ring had not been completed and purchased by his family.

132.   Henderson asked Thomas had he violated any rules or regulations and Thomas stated no.

133.   Henderson was called to IAD by Lieutenant David Grayson ("Greyson") and Roberts.

134.   Grayson gave Henderson a direct order to produce the ring for inspection on the following day, October 24, 2017.  Again, Henderson informed Greyson that he did not have possession of the ring yet because the jeweler had not completed it nor had his family paid for it.

135.   Henderson asked Greyson what rules or regulations he had violated, and Greyson stated none.

136.   Greyson had a picture of the ring that had been given to him by some other source and therefore, he could determine that no copyright laws had been violated.

137.   Henderson was questioned by Greyson without being tape recorded which is a violation of City of Birmingham Rules and Regulations procedure 110-1, Complaints, Investigations and Disciplinary Actions.

138. This incident was intimidation, harassment and retaliation by IAD against Henderson for the multiple complaints and grievances Henderson has filed on Newfield. Henderson asserts that Newfield's wife, Herrara, a sergeant in IA, is targeting him.

139. Henderson filed another grievance with the PBJC regarding the incident involving Henderson's celebratory ring.

140. Roper responded that he instructed IAD to investigate a credible complaint against Henderson regarding a badge replication, however Henderson was told by Thomas and Greyson he had not violated any rules or regulations and never stated he was under investigation. Further, proper investigation procedures were not followed during the questioning by Thomas or Greyson.

141. On January 16, 2018 Newfield filed a complaint on Henderson for being off of his beat for providing police presence on Martin Luther King Day at the Civil Rights Museum after Henderson observed a large crowd gathered. Newfield investigated his own complaint along with another sergeant Sergeant Ward.

142. Other similarly situated Caucasian officers have performed duties off their beat without having complaints filed against them.

143. On October 18, 2018, Henderson was given a letter documenting a Verbal Counseling for productivity stating that his productivity submitted on September 25 and October 17, 2018 were unacceptable.

144.   The Birmingham Police Department does not have "quota" or monthly minimum requirements.

145.   Other similarly situated Caucausian officers include Jonathan Robbins, Evan Orazine, Kyle Breece, Carl Endert, Ralph Burgin, Michael Raspbury and Christopher Graham.

**COUNT THREE**
**TITLE VII**
**HOSTILE WORK ENVIRONMENT**

146.   Henderson claims that the Defendant failed to take the necessary steps to protect him from a hostile work environment and has, in fact, condoned the retaliatory/adverse actions taken against Henderson.   The severe and pervasive harassment altered the terms and conditions of Henderson's employment and created a discriminatorily abusive working environment that: (1) interfered with Henderson's job performance and (2) placed Henderson in less than desirable work conditions.

147.   Sometime later, Stevens issued a direct order on procedures he wanted followed for making and documenting a required business check to a local motel located within the patrol area of Henderson.   This procedure was to deter a problem with trespassing.   Officers were told to get out on the radio (notifying dispatch) and document the checks on their "snitch sheets" (daily activity log).   Sergeants were

required to make sure that these procedures were enforced a minimum of two times per shift.

148.   Henderson arrived at the local motel to follow the order of Stevens.

149.   Once he got out on the radio, Newfield instructed Henderson not to follow Stevens order.  Henderson explained he was following Stevens order.

150.   Newfield was interfering with Henderson's working conditions and creating a hostile work environment by interfering with Henderson's job performance and placing him in less than desirable working conditions.

151.   Henderson was being micromanaged and his work performance was being closely scrutinized by Newfield.

152.   Other similarly situated Caucasian officers were allowed to follow Stevens order without interference from Newfield.

153.   Henderson spoke with Sergeant Norman Adams about the incident and requested to speak with Lieutenant Joe Roberts ("Roberts").

154.   Henderson asked Roberts to have Newfield refrain from harassing and placing Henderson in a hostile work environment.

155.   Roberts stated he could not stop Newfield and that Henderson did not have anything to complain about, but he [Roberts] would speak with Newfield.

156.   Henderson made another formal complaint to Polk who stated that she had received similar complaints from approximately seven other African American

officers against Newfield and she would be having a meeting with Chief A.C. Roper ("Roper") regarding the issue.

157.    On July 15, 2017 an officer, Robert Lewis, Jr., overheard Newfield discussing some prior incidents on Henderson's criminal record with Sergeant Merriman Bell. The only way Newfield could have obtained this information was to run an unauthorized NCIC/ACIC search on Henderson which is a violation of Henderson's federal rights.

158.    Henderson made a formal complaint with Lynn Shobe regarding the unauthorized criminal history search.

159.    Newfield's response to the multiple grievances filed by Henderson was that he had been cleared by the Birmingham Police Department Internal Affairs Division ("IAD").

160.    Newfield's wife, Rebecca Herrara, is a sergeant in IAD.

161.    Roper failed to respond stating the Henderson's grievance was untimely. Henderson asserts that his grievance was intentionally held and not submitted within the proper time.

162.    On September 21, 2017 Henderson filed a grievance with the Personnel Board of Jefferson County ("PBJC") due to the fact that the Birmingham Police Department was not conducting a proper investigation into his allegations of racial discrimination.

163.   The Defendant failed to remove Newfield as Henderson's sergeant despite his multiple requests for assistance from the Defendant to stop the harassment, retaliation and hostile work environment.

164.   On October 23, 2017 Henderson was called on the phone by Officer Tasha Thomas ("Thomas") in IAD and questioned about a ring that Henderson's family was purchasing for him to celebrate his tenth (10th) anniversary of being on the Birmingham Police force.  The ring is a replica of Henderson's badge.

165.   Thomas stated that IAD wanted to inspect the ring.  Henderson informed Thomas that the ring had been ordered, but the ring had not been completed and purchased by his family.

166.   Henderson asked Thomas had he violated any rules or regulations and Thomas stated no.

167.   Henderson was called to IAD by Lieutenant David Grayson ("Greyson") and Roberts.

168.   Grayson gave Henderson a direct order to produce the ring for inspection on the following day, October 24, 2017.  Again, Henderson informed Greyson that he did not have possession of the ring yet because the jeweler had not completed it nor had his family paid for it.

169.   Henderson asked Greyson what rules or regulations he had violated, and Greyson stated none.

170.   Greyson had a picture of the ring that had been given to him by some other source and therefore, he could determine that no copyright laws had been violated.

171.   Henderson was questioned by Greyson without being tape recorded which is a violation of City of Birmingham Rules and Regulations procedure 110-1, Complaints, Investigations and Disciplinary Actions.

172.   This incident was intimidation, harassment and retaliation by IAD against Henderson for the multiple complaints and grievances Henderson has filed on Newfield.  Henderson asserts that Newfield's wife, Herrara, a sergeant in IA, is targeting him.

173.   Henderson filed another grievance with the PBJC regarding the incident involving Henderson's celebratory ring.

174.   Roper responded that he instructed IAD to investigate a credible complaint against Henderson regarding a badge replication, however Henderson was told by Thomas and Greyson he had not violated any rules or regulations and never stated he was under investigation. Further, proper investigation procedures were not followed during the questioning by Thomas or Greyson.

175.   On January 16, 2018 Newfield filed a complaint on Henderson for being off of his beat for providing police presence on Martin Luther King Day at the Civil Rights Museum after Henderson observed a large crowd gathered.  Newfield investigated his own complaint along with another sergeant Sergeant Ward.

176.   Other similarly situated Caucasian officers have performed duties off their beat without having complaints filed against them.

177.   On October 18, 2018, Henderson was given a letter documenting a Verbal Counseling for productivity stating that his productivity submitted on September 25 and October 17, 2018 were unacceptable.

178.   The Birmingham Police Department does not have "quota" or monthly minimum requirements.

179.   Henderson has suffered a breakdown of his personal health as a direct result of the discrimination, retaliation and hostile work environment he has been subjected to.

180.   Henderson has sought the help of employee assistance, a psychiatrist and doctors for assistance in dealing the emotional, physical and mental affects the harassment, hostile work environment and retaliation are having on him.

181.   Henderson has been diagnosed with many health conditions that are directly related to the stress and mental anguish he has been subjected to as a result of asserting his rights afforded him under Title VII against the Defendant.

182.   The following demonstrates the Defendant's hostility in the workforce against Henderson: Henderson has been treated abusively by his superior officers, by being retaliatorily disciplined, having false investigations created against him and keeping Newfield as his supervisor despite his multiple requests for assistance.

183.   Other similarly situated employees have been treated more favorably than Henderson in each one of these instances including Jonathan Robbins, Evan Orazine, Kyle Breece, Carl Endert, Ralph Burgin, Michael Raspbury and Christopher Graham.

## **GENERAL PRAYER FOR RELIEF**

**WHEREFORE**, Henderson respectfully requests that this Court grant the following relief after a trial by jury:

A.     Grant Plaintiff a declaratory judgment that the practices complained of herein are violative of the provisions of Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981, and the amendments thereto;

B.     Grant Plaintiff an order enjoining Defendant and all persons acting in concert with Defendant from engaging in discriminatory and retaliatory employment practices;

C.     Grant Plaintiff an award of compensatory damages, including but not limited to an award for mental anguish and emotional distress;

D.     Award Plaintiff him costs and expenses, including an award of reasonable attorney's fees; and,

E.     Award Plaintiff an award of hedonic damages;

F.     Award such other relief as may be appropriate.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL CLAIMS TRIABLE.**

Respectfully Submitted,

/s/ Scott T. Morro
Scott T. Morro (ASB-4954-C30M)
Attorney for Plaintiff
Morro Law Center, LLC
P.O. Box 1644
Gardendale, AL 35071
Telephone: (205)631-6301
Fax: (205) 285-8542
morrowlawcenter@bellsouth.net

# EXHIBIT A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | __ FEPA<br>_X_ EEOC | 420-2018-01778 |

and EEOC

_State or local Agency, if any_

| Name (*indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Erik O'Neil Henderson | (205) 201-9153 | 04-29-1983 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 533 Fulton Avenue, S.W. | Birmingham, Alabama 35211 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| City of Birmingham Police Department | 900+ | (205) 254-1765 |

| Street Address | City, State and ZIP Code | |
|---|---|---|

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code | |
|---|---|---|

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest        Latest |
| _X_ RACE __ COLOR __ SEX __ RELIGION __ NATIONAL ORIGIN | October 23, 2017 |
| _X_ RETALIATION __ AGE __ DISABILITY __ OTHER (Specify below.) | _X_ CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

Please see attached.

RECEIVED
MAR 21 2018
Birmingham U.S. EEOC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | Heather M. Garrett |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| | |
| Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>HEATHER MCDANIEL GARRETT  March 14, 2018 |

NOTARY PUBLIC<br>HEATHER MCDANIEL GARRETT<br>My Commission Expires<br>December 6, 2020

*Complaint of Discrimination*
*Erik O. Henderson*
*Page 1*

The Complainant, Erik O. Henderson (African-American) asserts that he has been discriminated against because of his race, African-American, and in retaliation for his complaints of discrimination and harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and under 42 U.S.C. §1981. Specifically, the Complainant asserts as follows:

Complainant is employed with the Birmingham Police Department as a police officer. During his employment, he has been subjected to a workplace that is permeated with discrimination intimidation, ridicule, and insult that is severe and pervasive and that has altered the conditions of his employment, creating an abusive working environment. For example, on January 9, 2017, Complainant was told by dispatch to respond to a call. Complainant attempted to have a conversation with his immediate supervisor, Sgt. Charles Newfield about responding to the call in light of the fact that the department was, at that time, operating with a "short" staff. His supervisor yelled at him and pointed his finger in the Complainant's face in an intimidating manner. Sgt. Newfield never responded to the Complainant's question, but instead threatened to "write him up."

While responding to that call, the Complainant noticed that Sgt. Newfield drove slowly by the scene of the call. Then, while the Complainant was talking to the citizen who had made the call, the citizen received a call on his cell phone. He relayed the incoming phone number to the Complainant, which he recognized as police dispatch. The dispatcher then proceeded to ask the citizen a series of questions, the purpose of which was to elicit a citizen complaint against the Complainant. When the Complainant returned to the precinct, he was met by Sgt. Newfield and given a formal counseling (discipline), which the Complainant refused to sign. However, a white officer, Melvin Godbee, had been cautioned for the same infraction a few weeks earlier but did not receive a formal discipline. The Complainant reported all of this to the Human Resources Director, Peggy Polk, and informed her that he believed Sgt. Newfield's harassment was racially motivated.

On January 15, 2018, while the Complainant was on his beat with Officer Christopher Johnson, they noticed a large group of people near their assigned location. They notified the dispatcher that they were going to investigate. Shortly thereafter, the Complainant saw Sgt. Newfield pass by the scene slowly. The next evening, Sgt. Newfield informed the Complainant that he was under investigation for violating the rules and regulations by leaving his assigned area the night before. However, this was not a violation. In fact, while the Complainant was off, Sgt. Newfield made an announcement to the other officers that it was indeed proper to investigate a possible disturbance near their assigned area.

*Complaint of Discrimination*
*Erik O. Henderson*
*Page 2*

On another occasion, the Complainant was performing his duties as instructed by Captain Stevens, with regard to making required visits to the A.G. Gaston Motel during shift and documenting those visits accordingly. However, the Complainant was instructed by Sgt. Newfield not to perform the required checks, which would have been a violation of the Captain's orders. The Complainant reported this continued harassment by Sgt. Newfield to Sgt. Adams and Lt. Roberts, as well as his intention to file a complaint. Lt. Roberts responded that he could not make Sgt. Newfield stop what he was doing and that there was nothing for the Complainant to complain about. Although Lt. Roberts told the Complainant he would talk to Sgt. Newfield about his conduct, several months went by and he never heard anything from Lt. Roberts. The Complainant reported these events to Peggy Polk as well. Ms. Polk informed the Complainant that at least seven other police officers had lodged complaints against Sgt. Newfield and that she would discuss the situation with Police Chief A.C. Roper.

On July 15, 2017, Officer Robert Lewis, Jr. overheard Sgt. Newfield discussing the Complainant's prior criminal record with Sgt. Bell. His criminal background had already been investigated and cleared by the Department when he was first employed 10 years prior. Conducting a criminal history check through NCIC/ACIC without the Complainant's consent is a violation of his rights.

On or about September 21, 2017, the Complainant filed a formal grievance with the Personnel Board of Jefferson County. In his grievance, he reported the prior incidents of harassment based on his race. He reported what he was told by the Human Resources Director that at least seven other officers had made similar complaints against Sgt. Newfield. He also reported the suspected violation of his rights by Sgt. Newfield in obtaining his criminal record without his consent. In the grievance, the Complainant asked the Personnel Board to investigate all of these issues. Sgt. Newfield's response to the grievance was that he had been investigated by the Internal Affairs Division (IAD) and had been "cleared of all wrongdoing." Police Chief A.C. Roper responded to the grievance by stating that it had been untimely and, as such, the Department was not required to respond.

On October 23, 2017, approximately one month after he filed a formal grievance against his supervisor, the Complainant received a call from Officer Thomas in IAD requesting information about a ring that purportedly belonged to the Complainant. The ring in question was made by the Complainant's family with a replica of his badge in celebration of his ten years on the force. He was told to report to IAD and to bring the ring with him so that it could be inspected. The Complainant informed Officer Thomas that the ring had been ordered but that he did not actually have the ring yet. He asked Officer Thomas what rule or policy if any, had been violated and she responded, none. When the Complainant reported to IAD, he was met by Lt. David R. Greyson. At that time, Lt. Greyson demanded that the Complainant turn over the ring by October 24, 2017. Again, the Complainant was told that he had not violated any rule or policy.

*Complaint of Discrimination*

*Erik O. Henderson*
*Page 3*

The Complainant filed a grievance relating to being called into IAD and being threatened for no reason other than in retaliation for making a formal complaint of racial harassment against his supervisor. Lt. Greyson's only response to this grievance was that they had received a photograph of the ring and needed to make sure it did not constitute a violation of any Department rule or policy.

On November 1, 2017, the Complainant received a statement from the Personnel Board of Jefferson County stating that his initial grievance was ineligible for adjustment because it was not filed timely. To date, no action has been taken to stop the racial harassment by Sgt. Newfield.

The Complainant believes he has been discriminated against because of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and under 42 U.S.C. §1981 by being subjected to a racially hostile work environment. He also believes he was retaliated against in violation of these laws for engaging in protected conduct, namely opposing unlawful discrimination.

# EXHIBIT B

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Erik O. Henderson<br>533 Fulton Avenue S W<br>Birmingham, AL 35211 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street<br>Birmingham, AL 35205 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2018-01778 | BRENDA D. KNORR,<br>Investigator | (205) 212-2070 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Rushwonda Jovefun*                               SEP 1 2 2018

**BRADLEY A. ANDERSON,**
**District Director**

Enclosures(s)                                                        *(Date Mailed)*

cc:
**Samantha A. Chandler**
**ASSISTANT CITY ATTORNEY**
**City of Birmingham City Attorney's Office**
**710 North 20th Street, Suite 600**
**Birmingham, AL 35203**

**Megan Garcia**
**REVILL LAW FIRM**
**2027 2nd Ave. North, Suite A**
**Birmingham, AL 35203**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 212-2100
FAX (205) 212-2105
Website: www.eeoc.gov

Erik O. Henderson
533 Fulton Avenue SW
Birmingham, AL 35211

Charge Number:  420-2018-01778
Erik O. Henderson v. City of Birmingham Police Department

Dear Mr. Henderson:

This letter is sent to inform that upon review and consideration of the information gathered and based upon the investigation, we are unable to conclude that the information obtained establishes a violation of the statutes.  Please find the Commission's determination in this matter.  The determination will conclude our processing of this charge.  You will still be able to pursue this matter in federal court.  You will have 90 days from the date of your receipt of the dismissal and notice of rights to bring a private lawsuit against the Respondent.

If you have any questions or require additional information, do not hesitate to contact me by e-mail at brenda.knorr@eeoc.gov or by telephone at (205) 212-2070.

Sincerely,

SEP 1 2 2018

_____
Date Mailed

Brenda D. Knorr
Investigator

cc: Megan Garcia, Attorney for Charging Party

# EXHIBIT C



U.S. Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205-2397

OFFICIAL BUSINESS
Penalty for Private Use $300

35211-112833

BIRMINGHAM
AL 350
13 SEP '18
PM 6 L

UNITED STATES POSTAGE
PITNEY BOWES
02 1P
0000808113
MAILED FROM ZIP CODE 35205
$ 000.680
SEP 12 2018