# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ERIK HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:18-cv-02062-SGC |
| | ) | |
| CITY OF BIRMINGHAM, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Erik Henderson, commenced this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, naming the City of Birmingham as the defendant. (Doc. 1). Before the undersigned is the defendant's motion to dismiss Henderson's complaint, pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. (Doc. 4).[2] For the reasons discussed below, the motion is due to be granted, and this action is due to be dismissed with prejudice.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8).
[2] Although the defendant cites Rule 12(b)(1) of the *Federal Rules of Civil Procedure* as another basis for dismissal (Doc. 4 at 1), it makes no argument for dismissal on the ground subject matter jurisdiction is lacking. Review of the complaint confirms the existence of subject matter jurisdiction in this action.

## I. Allegations of Complaint

Henderson is African America. (Doc 1 at ¶ 15). He has been employed by the defendant as a police officer since March 2007. (*Id.*). On January 9, 2017, a dispatcher for the Birmingham Police Department (the "BPD") told Henderson to respond to a call from a citizen who wanted a theft report. (*Id.* at ¶ 19). Henderson asked Sergeant Charlie Newfield whether he should respond to the call or whether the desk officer should respond to the call, given Deputy Chief Cedric Stevens had instructed that due to a shortage of officers the desk officer should respond to citizens who walked in to obtain reports. (*Id.* at ¶¶ 18, 20). Sergeant Newfield got in Henderson's face, pointed his finger in a physically threatening manner, and stated in an angry, hostile tone, "[The dispatcher] gave you the call and you need to go answer it." (*Id.* at ¶ 21). Henderson asked Sergeant Newfield why he was treating and talking to him so abusively. (*Id.* at ¶ 22). Sergeant Newfield replied, "Do you want me to write you up?" (*Id.*).

Two things happened while Henderson was taking the citizen's report. First, Henderson noticed Sergeant Newfield was purposefully driving by slowly and observing Henderson's interaction with the citizen. (*Id.* at ¶ 23). Second, the citizen received a phone call from a BPD dispatcher, who asked the citizen questions in an apparent effort to elicit a complaint against Henderson. (*Id.* at ¶ 24). The dispatcher specifically asked the citizen whether he or she had any complaints. (*Id.*).

Sergeant Newfield gave Henderson a Letter of Counseling for unnecessary use of a police radio in connection with this incident. (*Id.* at ¶ 25). Approximately four days before Henderson received the letter, which is a form of formal discipline, a similarly situated Caucasian officer identified as Melvin Godbee was instructed to stop arguing with a dispatcher over the radio but was not disciplined. (*Id.* at ¶¶ 25-26). Based on the foregoing, Henderson made a formal complaint of race discrimination against Sergeant Newfield to the City of Birmingham Human Resources Director, Peggy Polk. (*Id.* at ¶ 27).

Some time after the dispatch incident, Deputy Chief Stevens issued a direct order regarding procedures for checking a motel located within Henderson's patrol area. (*Id.* at ¶ 28). Sergeant Newfield instructed Henderson not to follow Deputy Chief Stevens' order. (*Id.* at ¶ 30). Henderson characterizes Sergeant Newfield's behavior as micromanagement, close scrutiny of and interference with his job performance, and interference with his working conditions. (*Id.* at ¶¶ 31-32). Similarly situated Caucasian officers were allowed to follow Deputy Chief Stevens' order without inference from Sergeant Newfield. (*Id.* at ¶ 33).

Henderson spoke with Sergeant Norman Adams and Lieutenant Joe Roberts about the motel-check incident. (*Id.* at ¶ 34). He asked Lieutenant Roberts to prevent Sergeant Newfield from harassing him. (*Id.* at ¶ 35). Lieutenant Roberts told Henderson he could not do anything about Sergeant Newfield's behavior and

Henderson had nothing about which to complain but that he would speak with Sergeant Newfield. (*Id.* at ¶ 36). Henderson also made a formal complaint to Polk regarding the motel check incident. (*Id.* at ¶ 37). Polk told Henderson she had received similar complaints from approximately seven other African American officers and would be meeting with Chief A.C. Roper regarding Sergeant Newfield. (*Id.*).

On July 15, 2017, Officer Robert Lewis, Jr., overheard Sergeant Newfield discussing Henderson's criminal record with another sergeant. (*Id.* at ¶ 38). The only way Sergeant Newfield could have obtained his information was by running an unauthorized "NCIC/ACIC" search in violation of Henderson's rights. (*Id.*). Henderson made a formal complaint to Lynn Shobe regarding this incident. (*Id.* at ¶ 39).

On September 21, 2017, Henderson filed a grievance with the Personnel Board of Jefferson County ("PBJC"), claiming the BPD was not conducting a proper investigation into his complaints of race discrimination. (*Id.* at ¶ 43). In response to the grievance, Sergeant Newfield stated he had been cleared of wrongdoing by the BPD's Internal Affairs Division (the "IAD"). (*Id.* at ¶ 40). Sergeant Newfield's wife, Rebecca Herrara, is a sergeant in the IAD. (*Id.* at ¶ 41). Chief Roper took the position he was not required to respond to Henderson's grievance because it had not

been timely filed.  (*Id.* at ¶ 42).  Henderson alleges the grievance "was intentionally held and not submitted within the proper time."  (*Id.*).

On October 23, 2017, Henderson received a phone call from IAD Officer Tasha Thomas, asking to inspect a ring Henderson's family was purchasing to celebrate his tenth anniversary with the BPD.  (*Id.* at ¶¶ 45-46).  The ring was to be a replica of Henderson's badge.  (*Id.* at ¶ 45).  Henderson told Officer Thomas that while the ring had been ordered, it had not been completed or paid for.  (*Id.* at ¶ 46).  Henderson asked Officer Thomas whether he had violated a rule or regulation, and Officer Thomas answered in the negative.  (*Id.* at ¶ 47).

IAD Lieutenant David Greyson also called Henderson and directed him to produce the ring for inspection on the following day, October 24, 2017.  (*Id.* at ¶¶ 48-49).  Henderson told Lieutenant Greyson he did not yet have possession of the ring.  (*Id.* at ¶ 49).  He also asked Lieutenant Greyson what rule or regulation he had violated, and Lieutenant Greyson stated none.  (*Id.* at ¶ 50).  Lieutenant Greyson had obtained a picture of the ring from someone else and could determine no copyright laws had been violated.  (*Id.* at ¶ 51).

Henderson filed a grievance with the PBJC regarding the ring incident.  (*Id.* at ¶ 54).  Chief Roper responded to the grievance by stating he had instructed the IAD to investigate a credible complaint against Henderson regarding a badge replication.  (*Id.* at ¶ 55).  Henderson questions the sincerity of this response because

Officer Thomas and Lieutenant Greyson told him that he had not violated a rule or regulation and never indicated he was under investigation and because these officers did not follow investigation procedures when questioning him, such as by tape recording the conversations. (*Id.* at ¶¶ 52, 55).

On January 16, 2018, Sergeant Newfield filed a complaint against Henderson for leaving his beat to provide a police presence at the Civil Rights Museum on Martin Luther King, Jr. Day after observing a large crowd gathered. (*Id.* at ¶ 56). Sergeant Newfield investigated his own complaint. (*Id.* at). Similarly situated Caucasian officers have performed duties off their beats without recourse. (*Id.* at ¶ 57).

On March 21, 2018, Henderson filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* at ¶ 11). Henderson received a notice of suit rights from the EEOC on September 16, 2018. (*Id.* at ¶ 12).

On October 18, 2018, Henderson received a letter documenting verbal counseling he had received because his productivity had allegedly been unacceptable. (*Id.* at ¶ 58). The BPD does not have "quota" or monthly minimum requirements for productivity. (*Id.* at ¶ 59).

In addition to the foregoing allegations, Henderson identifies by name seven Caucasian officers he alleges are similarly situated, without alleging the officers received more favorable treatment from the defendant or how. (*Id.* at ¶ 108 ("Other

similarly situated employees include Jonathan Robbins, Evan Orazine, Kyle Breece, Carl Endert, Ralph Burgin, Michael Raspbury and Christopher Graham.")).

Based on various combinations of the foregoing allegations, Henderson asserts claims for race discrimination and retaliation. He brings each of these claims under Title VII and § 1981.[3] Although the defendant has filed a motion to dismiss Henderson's complaint, that motion contains substantive argument only with respect to one claim. (Doc. 4). Nonetheless, in the interest of the efficient disposition of this action and because Henderson has responded based on the assumption the defendant's motion pertains to his complaint in its entirety (Doc. 11), the undersigned will address the plausibility of each of Henderson's claims.

## II. Standard of Review

Rule 12(b)(6) must be considered against the backdrop of Rule 8(a)(2) of the *Federal Rules of Civil Procedure*. Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 "does not require 'detailed factual

---

[3] With limited exceptions, Henderson pleads all of the allegations in the facts section of his complaint and re-pleads certain of the allegations under each discrete count. Although Henderson has circumscribed the allegations on which each count relies, the undersigned finds it more efficient to consider all of the allegations in analyzing each count.

allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim on which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III. Discussion

Title VII and § 1981 both prohibit race-based employment discrimination, as well as retaliation for opposing or participating in an investigation of race-based employment discrimination. 42 U.S.C. §§ 2000e-2(a)(1) (Title VII discrimination provision), 2000e-3(a) (Title VII retaliation provision); *Milton v. Milligan*, 2013 WL

8288591, at *1 (N.D. Fla. Mar. 5, 2013) (noting § 1981 explicitly prohibits race-based employment discrimination and implicitly prohibits retaliation for asserting rights under the statute). Moreover, the elements of race-based employment discrimination and retaliation claims brought under Title VII and § 1981 are the same. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (addressing disparate treatment claims involving tangible employment actions); *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (addressing hostile work environment claims); *Barnett v. Athens Reg'l Med. Ctr., Inc.*, 550 F. App'x 711, 713-14 (11th Cir. 2013) (addressing retaliation claims). Accordingly, the Eleventh Circuit "has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010); *see also Standard*, 161 F.3d at 1330-33 (analyzing race discrimination claims brought under Title VII and § 1981 together); *Barnett*, 550 F. App'x at 714-15 (analyzing retaliation claims brought under Title VII and § 1981 together); *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303, 1315 (M.D. Ala. 2010) (using Title VII cases and § 1981 cases interchangeably). The undersigned will do the same.

**A. Disparate Treatment Claims**

There are two theories of intentional discrimination under Title VII: disparate treatment discrimination and pattern or practice discrimination. *Burke-Fowler v. Orange Cty., Florida*, 447 F.3d 1319, 1322 (11th Cir. 2006). A third theory of

discrimination under Title VII prohibits neutral employment practices that, although non-discriminatory on their face, have an adverse, disproportionate impact on a statutorily protected group. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273-74 (11th Cir. 2000). The undersigned construes the complaint as alleging disparate treatment discrimination.[4]

Disparate treatment discrimination claims come in two types: (1) those involving tangible employment actions, such as discipline or termination, and (2) those based on a hostile work environment that alters the terms and conditions of employment, even though the employee does not suffer a tangible employment action. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010). Count III of the complaint clearly asserts a hostile work environment claim, and the undersigned construes Count I as asserting a disparate treatment claim involving tangible employment actions.

### 1. Involving Tangible Employment Actions

Where, as here, a plaintiff attempts to establish a disparate treatment claim involving tangible employment actions with circumstantial evidence of

---

[4] The Eleventh Circuit has indicated claims of pattern or practice discrimination are generally brought either by the EEOC or a class of private plaintiffs. *See Joe's Stone Crab*, 220 F.3d at 1286. Therefore, to the extent Henderson asserts a pattern and practice discrimination claim, it fails because the EEOC has not joined this action and Henderson is not proceeding on behalf of a class of plaintiffs. *See Skelton v. Birmingham Airport Auth.*, 2018 WL 6523172, at *2 n.1 (N.D. Ala. Dec. 12, 2018) (dismissing pattern and practice discrimination claim asserted by individual plaintiff); *Banks v. Ackerman Sec. Sys., Inc.*, 2009 WL 974242, at *3 (N.D. Ga. Apr. 10, 2009) (same).

discrimination, a court typically uses the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate the claim. *Burke-Fowler*, 447 F.3d at 1323; *see also Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (holding *McDonnell Douglas* framework is not *sine qua none* for plaintiff to survive summary judgment but, rather, triable issue of fact exists if plaintiff presents convincing mosaic of circumstantial evidence that allows inference of intentional discrimination).[5] Under this framework, a plaintiff establishes a prima facie case by showing (1) he belongs to a protected class, (2) he was subjected to an adverse employment action, (3) his employer treated similarly situated employees outside his class more favorably, and (4) he was qualified to do the job. *Burke-Fowler*, 447 F.3d at 1323.[6]

At the pleading stage, a plaintiff asserting a disparate treatment claim involving tangible employment actions is not required to allege facts sufficient to

---

[5] A plaintiff may also establish a disparate treatment claim with direct evidence of discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* at 1086 (internal quotation marks omitted). Henderson alleges no statement or conduct that constitutes direct evidence of race-based discrimination. *Compare Dixon v. Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010) (noting Eleventh Circuit has held documents stating " 'Fire Early – he is too old'" and " 'Fire Rollins – she is too old'" constitute direct evidence of discrimination), *with Tomczyk v. Jocks & Jills Rests., LLC*, 198 F. App'x 804, 810 (11th Cir. 2006) (holding use of racially derogatory comments not directly linked to decision to terminate plaintiff served as circumstantial evidence of discrimination at best).

[6] The burden then shifts to the defendant to show a legitimate, non-discriminatory reason for its employment action. *Burke-Fowler*, 447 F.3d at 1323. If the defendant makes this showing, the burden shifts back to the plaintiff to prove the reason is pretext for unlawful discrimination. *Id.*

make out a *prima facie* case under the *McDonnell Douglas* framework. *Davis v. Coca-Cola Bottling Co. Consol*, 516 F.3d 955, 974 (11th Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).[7] Nonetheless, he must satisfy the pleading standard articulated by *Twombly* and *Iqbal*, which requires that he allege enough facts, accepted as true, to suggest intentional race discrimination. *Id.*

Henderson fails to satisfy this threshold requirement. By and large, he identifies incidents of perceived mistreatment without identifying a similarly situated employee outside his protected class who the defendant treated more favorably or alleging any other facts that would suggest the incidents constitute intentional race discrimination. Alleging "[o]ther similarly situated employees include Jonathan Robbins, Evan Orazine, Kyle Breece, Carl Endert, Ralph Burgin, Michael Raspbury and Christopher Graham" (Doc. 1 at ¶ 108) as a standalone paragraph disconnected from any particular incident and without any factual allegations as to how the defendant treated these officers more favorably is too vague to support a plausible discrimination claim. *See Davis*, 516 F.3d at 974 (holding allegation plaintiffs were denied promotions and treated differently than similarly situated white employees solely because of race "epitomize[d] speculation" and,

---

[7] *Davis* was abrogated on other grounds by *Twombly* and *Iqbal*. *See LaCroix v. Western Dist. Of Kentucky*, 627 F. App'x 816, 818 (11th Cir. Sept. 28, 2015) (recognizing abrogation).

thus, failed to satisfy pleading requirements); *Uppal v. Hosp. Corp. of America*, 2011 WL 2631869, at *3 (M.D. Fla. July 5, 2011) ("District courts frequently dismiss discrimination claims when the allegations of disparate treatment are nothing more than legal conclusions unsupported by any facts."), *aff'd*, 482 F. App'x 394 (11th Cir. 2012).

Henderson does identify Officer Godbee as a comparator for the dispatch incident, alleging that while he received a Letter of Counseling related to his communication with a dispatcher over the radio, Officer Godbee, who is Caucasian, was not disciplined for arguing with a dispatcher over the radio. (Doc. 1 at ¶¶ 25-26). However, the letter is not an adverse employment action that will support a disparate treatment claim absent a factual allegation it resulted in tangible job consequences.

In the disparate treatment context, an adverse employment action is one that results in "a serious and material change in the terms, conditions, or privileges of employment," as viewed from the perspective of a reasonable person. *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239-40 (11th Cir. 2001), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Applying this standard, the Eleventh Circuit has held a counseling memorandum that is neither a formal reprimand nor accompanied by tangible job consequences in the form of loss of pay or benefits or further discipline is not an adverse employment

action that will support a disparate treatment claim. *Id.* at 1240-42; *see also Wallace v. Georgia Dep't of Transp.*, 212 F. App'x 799, 801 (11th Cir. 2006) (holding written reprimand that did not lead to any tangible harm in the form of lost pay or benefits or the denial of a promotion was not an adverse employment action that would support a claim of disparate treatment discrimination); *Davis v. Florida Dep't of Children and Family Servs.*, 2009 WL 3837872, at *5 (N.D. Fla. Sept. 30, 2009) (holding letter of counseling was not an adverse employment action that would support a claim of disparate treatment discrimination). Although Henderson alleges the Letter of Counseling he received was a form of formal discipline, he alleges no facts as to any tangible job consequences of the letter.

Henderson alleges that while Sergeant Newfield instructed him not to follow Deputy Chief Stevens' order for checking a motel, similarly situated Caucasian officers were allowed to follow Deputy Chief Stevens' order without interference from Sergeant Newfield. (Doc. 1 at ¶¶ 30, 33). Henderson also alleges that while Sergeant Newfield filed and investigated a complaint against him for leaving his beat, similarly situated Caucasian officers have performed duties off their beats without recourse. (*Id.* at ¶¶ 56-57). However, as is the case with the Letter of Counseling, neither Sergeant Newfield's instruction nor the complaint he filed and investigated, are adverse employment actions that will support a disparate treatment claim absent factual allegations of tangible, serious, and material job consequences.

Without a comparator for an adverse employment action or other facts suggesting any of the incidents of which he complains constitute intentional race discrimination, Henderson has failed to state a plausible disparate treatment claim of the first type.

### 2. Based on Hostile Work Environment

A hostile work environment is one " 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A plaintiff establishes a hostile work environment claim by showing (1) he belongs to a protected group, (2) he has been subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, such as race, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment, and (5) his employer is responsible for such environment under a theory of direct or vicarious liability. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014). Whether conduct is sufficiently severe or pervasive involves both a subjective and objective inquiry. *Id.* at 1249. Relevant to the objective component are the following factors: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is

physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id.* at 1250-51.

Henderson alleges Sergeant Newfield perpetrated the dispatch incident, instructed him not to follow Deputy Chief Stevens' order to check a motel, searched his criminal record without authorization, and filed and investigated a complaint against him for leaving his beat. To the extent these incidents could be considered harassment, and even assuming Henderson alleges facts sufficient to connect the incidents to his race, the incidents as pleaded do not constitute harassment so objectively severe or pervasive as to be actionable. Four incidents of alleged harassment, only one of which involved alleged physically threatening conduct – and mild physically threatening conduct at that – spread out over the course of one year and unaccompanied by factual allegations the harassment interfered with Henderson's ability to perform his job, fall short of the mark. *See Davis v. Auburn Bank*, 2016 WL 1605349, at *12 (M.D. Ala. Mar. 30, 2016) (finding plaintiff's allegations she, unlike Caucasian co-workers, was reprimanded for certain behavior and required to comply with work rules insufficient to show objectively severe or pervasive harassment), *report and recommendation adopted*, 2016 WL 1560404 (M.D. Ala. Apr. 18, 2016), *aff'd*, 704 F. App'x 837 (11th Cir. 2017); *Pedrioli v. Barry Univ., Inc.*, 2018 WL 2215464, at *3 (M.D. Fla. May 15, 2018) (holding male

plaintiff's allegations his employer expressed preference for working with women, often commented she did not want men in various departments and positions, and subjected plaintiff to more rigorous review than female colleagues failed to show objectively severe or pervasive harassment); *Thompson v. City of Miami Beach, Florida*, 990 F. Supp. 2d 1335, 1341 (S.D. Fla. 2014) (holding three offensive race-based remarks, unaccompanied by physically threatening conduct or factual allegations showing remarks unreasonably interfered with plaintiff's job performance, and made over two-year period failed to show objectively severe or pervasive harassment).[8]

Henderson also offers the ring incident and the letter related to his productivity as bases for his hostile work environment claim. However, the complaint is devoid of allegations that would allow the inference the ring incident or the productivity letter were related to Henderson's race. Therefore, these incidents cannot be considered for purposes of showing a racially hostile work environment. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (noting that only conduct based on protected category may be considered in hostile work environment

---

[8] Henderson's allegations the purported harassment interfered with his job performance and placed him in less than desirable work conditions (Doc. 1 at ¶ 146), without factual enhancement, are nothing more than recitations of an element of a *prima facie* case of a hostile work environment. Moreover, although Henderson generally alleges the purported harassment has affected his physical and mental health (Doc. 1 at ¶¶ 59-62), he does not allege facts that would indicate the effects carried over into his job performance.

analysis), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry.*, 548 U.S. 53.

For the foregoing reasons, Henderson has failed to state a plausible hostile work environment claim.

## C. Retaliation Claims

Absent direct evidence, courts also use the *McDonnell Douglas* burden-shifting framework to analyze retaliation claims. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Under this framework, a plaintiff establishes a *prima facie* case of retaliation by showing (1) he engaged in a protected activity, such as reporting harassment or other discrimination based on a protected characteristic, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). As with a disparate treatment claim, a plaintiff need not allege facts at the pleading stage sufficient to make out a *prima facie* case of retaliation under the *McDonnell Douglas* framework, but he must allege enough facts to suggest discriminatory retaliation. *Marshall v. Mayor & Alderman of City of Savannah, Georgia*, 366 F. App'x 91, 100 (11th Cir. 2010) (citing *Davis*, 516 F.3d at 974).

Henderson alleges five possible protected activities: (1) the complaint he made against Sergeant Newfield in connection with the dispatch incident, (2) the

complaint he made against Sergeant Newfield in connection with the motel check incident, (3) the grievance he filed with the PBJC based on the claim the BPD was not conducting a proper investigation into the foregoing complaints, (4) the grievance he filed with the PBJC regarding the ring incident, and (5) his EEOC charge.

To demonstrate a causal connection between any of these activities and any subsequent adverse employment actions, Henderson would be required to show decision-makers were aware of the activities and that the activities and the subsequent adverse employment actions were not "wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted). "Close temporal proximity" may be sufficient to show a protected activity and an adverse employment action were not "wholly unrelated." *Gupta*, 212 F.3d at 590 (internal quotation marks omitted). However, temporal proximity, without more, must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (internal quotation marks omitted). When three or more months elapse between a protected activity and an adverse employment action, the temporal proximity of the events is not "very close." *Id.*

Henderson does not allege when he made the first or second complaint or filed the second PBJC grievance. Absent such allegations, the complaint provides no temporal-based causal connection between these activities and subsequent alleged

adverse employment actions, nor does it include factual allegations that would permit the inference of some other type of causal connection.

Henderson does allege he filed the first PBJC grievance on September 21, 2017, and that the ring incident occurred the next month. (Doc. 1 at ¶¶ 43, 45, 49). Additionally, Henderson alleges the wife of a subject of the first PBJC grievance is a sergeant in the same department as the officers who contacted him about inspecting the ring (*id.* at ¶¶ 41, 45, 48), which the undersigned construes as an attempt to link Henderson's protected activity with the ring incident. However, regardless of whether Henderson has alleged a causal connection between the first PBJC grievance and the ring incident, that incident is not an adverse employment action.

An employment action that will support a retaliation claim is one that is "materially adverse." *Crawford*, 529 F.3d at 973. A materially adverse action is one that " 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination,'" "irrespective of whether it is employment or workplace-related." *Id.* at 973-74 (quoting *Burlington N. and Santa Fe Ry.*, 548 U.S. at 68). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *Burlington N. and Santa Fe Ry.*, 548 U.S. at 68. Henderson alleges IAD officers asked and then demanded to inspect the ring. He does not allege the ring was confiscated or that he was otherwise prohibited from wearing the ring. Even if IAD officers directed Henderson to produce the ring for

inspection as punishment for the first PBJC grievance, this was nothing more than a petty slight or minor annoyance.

The other potential adverse employment actions following the first PBJC grievance occurred more than three months after Henderson filed the grievance, a period the Eleventh Circuit has held does not constitute very close temporal proximity for purposes of showing a causal connection. Similarly, the one potential adverse employment action following the EEOC charge occurred more than three months after Henderson filed the charge. The complaint contains no allegations that would permit the inference of a causal connection other than temporal proximity between either the first PBJC grievance or the EEOC and the other potential adverse employment actions that followed.

The undersigned notes Henderson also alleges the defendant retaliated against him by failing to remove Sergeant Newfield as his supervisor. (Doc. 1 at ¶ 112). Henderson fails to enhance the allegation with facts that would indicate the defendant intentionally kept him staffed under Sergeant Newfield as punishment for any complaints or grievances he filed.

Lacking factual allegations permitting the inference of a causal connection between any protected activity and any subsequent materially adverse employment action, or otherwise suggesting discriminatory retaliation, the complaint fails to state a plausible retaliation claim. *See Thompson*, 990 F. Supp. 2d at 1342-43 (holding

plaintiff failed to state retaliation claim where more than three months elapsed between protected activity and adverse employment actions and plaintiff alleged no other causal link); *Uppal*, 482 F. App'x at 397 (holding plaintiff failed to state retaliation claim where she did not allege decision-makers responsible for adverse employment actions were aware of protected activity or allege any other causal connection between protected activity and adverse employment actions); *Thomas*, 506 F.3d at 1364 (holding plaintiff failed to present evidence from which reasonable jury could find causal connection between protected activity and adverse employment action that occurred three months later).

## IV. Conclusion

For the foregoing reasons, the defendant's motion to dismiss (Doc. 4) is due to be granted, and this action is due to be dismissed with prejudice.[9]  A separate order will be entered.

**DONE** this 15th day of January, 2020.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[9] Henderson has not requested leave to amend his complaint.  *See Daewoo v. Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").